of America, et al. Mr. Frederick for the appellant, Mr. Smith for the appellees. Good morning. Good morning. May it please the court. The interveners are not prevailing parties because they did not win this lawsuit. The only favorable judicial order they obtained in this case was vacated by the Supreme Court on appeal, and the district court's order was illegitimate in the first place because it was based on an unconstitutional preclearance regime. Even if they could qualify as prevailing parties, which they cannot, the special circumstances of this case would make any award of fees unjust. I want to start with an issue that appears in the appellees' briefs, and that's the question of timing. When did the orders come down? When were the new maps enacted? That issue is a distraction. The question of when and how a case becomes moot on appeal is relevant under Munsonware and Bancorp to determine whether vacater is justified. But we're already past that point here because the Supreme Court vacated the district court's opinion. They did so despite the intervener's order in place. So they didn't vacate it as moot under Munsonware. They vacated it for reconsideration in light of Shelby County and the legislative development. So that's very different from a Munsonware vacature by the Supreme Court. That's true. However, in this case, that weighs even more strongly against an award of fees because we expressly asked the court to vacate the lower court's judgment in light of Shelby County, not because of our newly enacted plans. The other side argued that our plans made the appeal moot, but that's not what the Supreme Court did. Right. The Supreme Court sent it back to the three-judge court to figure out whether it was moot, and if so, on what basis. Do you dispute that? All we know from the Supreme Court's order is that they vacated it and they remanded it for further consideration in light of Shelby County and the suggestion of mootness by the interveners. But the act of granting vacater is the critical fact because Bancorp says that vacater is an extraordinary remedy. And by granting vacater, as requested by Texas, the Supreme Court made a determination that we were equitably entitled to that relief against the district court's order. Well, the Supreme Court many, many times in a term will grant vacater remand for reconsideration in light of a decision that they issue, or in light of some submission by the parties. But it's pretty well settled that that does not mean that they thought the lower court was wrong, that the lower court is actually bound by whatever they say to reconsider, and they have to reconsider, but it doesn't dictate the outcome of that proceeding. And so it was very much a determination here, not that it was mooted under Shelby County as of the date of that order or as of the date of Shelby County, but that it was remanded for the three-judge court to sort of sort out what happened when. I would disagree with that because they vacated the order, period. And that leaves us in the position we're in. Under Buckhannon, they have no judgment in their favor. And even if the now vacated judgment could satisfy that first element of the Buckhannon test for when a defendant seeks fees, they couldn't possibly satisfy the third element, which is a judicial pronouncement accompanied by judicial relief. The favorable Well, they got relief. Indeed, isn't it their position that they got, it's precisely the relief that they obtained that, you know, incited the Texas legislature to act? And we have the black police officer's case that has a very similar fact pattern where the case is mooted with a favorable final judgment in the, in this case, defendant-intervenor's favor. And the fact that it's mooted means we can't hypothesize what might have, would have happened thereafter. But they prevailed for purposes of Buckhannon, and at least they would argue they're entitled to fees. Well, I don't disagree with that, that statement of what happened in the national black police officer's case. But I don't think it's quite accurate to say that they were deemed prevailing under Buckhannon because that case was before Buckhannon. Right. But this case, the only, to the extent the intervenors achieved any objective, they did so only because the legislature and the governor voluntarily acted. And as the district court Well, no, they got a final judgment from the three-judge court, and then the legislature acted. Right? So they did get a final, I mean, that's really pretty important under Buckhannon that they got a final court-awarded ruling. They did, but it was vacated. And the reason that this is different from national black police officers is that, first, that was before Buckhannon, but besides that, the plaintiffs in that case secured a favorable judgment and an injunction that required the defendants to change their behavior. That's not the case here. Well, that's because they were defendants, not plaintiffs. That's true. In this litigation, they got the defense that they wanted. They denied Texas what it wanted. That's true. So it can't be that you have to have relief in that form when you're intervening as a plaintiff. Perhaps not, but in this case, that highlights how different they are from the plaintiffs in national black police because Let me ask you, Mr. Ferrer, do you think anything about Buckhannon affects the presidential weight of our national black police officers case on its own terms? In other words, would national black police officers come at any differently post-Buckhannon? I think it might, but it doesn't have to, and this court does not have to decide that question. No, but when you say it might, what are you thinking? Well, the court just didn't have occasion to consider Buckhannon in that case. Right, but you don't have any particular conflict or tension in mind. The fact that the judgment was vacated, I think, is a significant development that before But here, we have to deal with it. Can I back up and actually question that? Do we have to deal with it? Because your filing in district court did not argue that they were not a prevailing party on any of the grounds we've been talking about. You simply said that Shelby County, as of the moment of its issuance, made you a prevailing party, or made them that prevailing party, made you the one that prevailed and constitutionally barred an award of fees. Well, we absolutely argue that they are not prevailing parties, based on Shelby County. But you did argue that they're not prevailing. Absolutely, yes. We do have authority that says we review decisions, not necessarily arguments. Absolutely. We did make that argument, and to get back to your point, the other distinction between this case and national black police officers, Texas had to prove a negative here. The defendants, the intervenors, had to prove nothing. That makes this very different, because they did not secure affirmative relief on the merits. All they did was preserve the status quo. But that's always the case for a defendant. Like in Greene, we truncated the analysis for a prevailing defendant, prevailing parties, warding something off as distinct from proving an affirmative right to relief. So that really just describes how the analysis would be different for a defending versus a plaintiff party. It is, but I think that that is a reason that the vacater, based on Shelby County, eliminates any basis for a fee award here, because they did not hang on to their judgment. It was reversed. It was vacated in the Supreme Court because of Shelby County. That's exactly why we asked. I'm sorry, go ahead and finish your time. The only thing they're left with is voluntary conduct by the state. That was not required by any order issued by the district court. It was required by the automatic injunction. The status quo was preserved from the outset by the automatic injunction under Section 5. The district court's decision did not obligate the state to do anything. It was only voluntary action that gave them any relief. I just wanted to clarify one thing, and that is you do not, you have not in your brief, and so I take it you do not here challenge the district court's application of Rule 7b? You didn't do that at all in your opening brief. So that's waived? No, it's not waived, because the way that the, we don't challenge how she applied it, because the way she applied it was, I will consider the arguments Texas made and not complain about that. And I will preserve the rest of my time. May it please the Court? The question of whether the defendant intervened in this case or were prevailing parties in this case is an interesting one. I think we have the better... Very interesting one. You were an intervener on behalf of the defendant. Yes. The defendant never got a favorable judgment. The defendant did not get a... Did not get a final favorable judgment. Well, there was a final... How are you prevailing party? The rule in this circuit under the National Black Police Officers Association is that if you get a favorable district court judgment, and then while the appeal is pending and while that judgment is still in full force in effect, the defendant moots the case by repealing the law at issue, then you are a prevailing party. That is the procedural posture that this case had. Admittedly, it is different because Shelby County came down the day before. And also, the question, and I understand that there are cases that say interveners can be prevailing parties, but is that not complicated in the case of the defendant that in a sense you did nothing? I mean, in black police officers, you could at least say that the, not that least, you could certainly say that the actions of the plaintiff caused the result... We did a tremendous amount, Your Honor. Indeed, there were whole claims in this case that the United States didn't even contest on which we prevailed. No, you never prevailed on anything. We did in the district court. In the end, you never could. Well, actually, the question of the prevailing party status is really when was our prevailing party status determined? Is it locked in when they repeal it, or do we look at the subsequent events after the repeal? The point I want to make this morning, I think, to begin with is that issue wasn't properly before this Court. The whole question of whether we were right or wrong about relying on national black police officers was waived twice, not just in the district court when they failed even to respond to that argument and the district court relied entirely on Rule 7b, but then it was waived again in this Court. You can look in their appellate brief and you find not a single reference to the fact that they lost on the basis of waiver. The word waiver doesn't appear in their brief. They do not refer to anything about the reasoning of the Court about Rule 7b. They simply didn't appeal the decision of the district court on which they lost. It's difficult in this case, Mr. Smith, to put much stock in waiver given the nature of the Shelby County decision. I don't take you to be arguing that had the litigation proceeded under Shelby County, you would have been able to have that case reversed or distinguish it, although I hesitate on distinguish it. You were arguing for bail-in obligations for preclearance, but the case could not have continued in D.C. on any kind of Section 2 or constitutional claims. Not on those claims, Your Honor. There might have been an argument at the time, and certainly people spent a great deal of time trying to figure this out the day Shelby County came down and thereafter, about whether or not Shelby County in fact governed pending cases like this one involving conduct from several years earlier. It says at the end the coverage formula can no longer be used, and there was some question about that. We didn't end up litigating that issue here because they repealed the map, so it was irrelevant. There was a double mootness. But it matters, I think, to our fee jurisprudence that one of the premises, as I take it, of the National Black Police Officer's case and other mootness cases are that it makes sense, as you put it, to freeze the prevailing party status as of the time of the conduct rendering the case moot, because had your opposing party not rendered it moot, you would have lived to fight another day. But in a case in which there's sort of nothing more to fight about, that reasoning is weaker. So I'm interested in what it is that you could have done to defend that judgment had Texas not rendered it moot in light of Shelby County and the GDR. The issue would have been, does it apply to pending cases involving earlier conduct? This was a constitutional violation that was temporal. At some point in time, the coverage formula was too stale. The court did not tell us when. It turns out, I think, that most people have But that was far from obvious, and we could have made arguments about that, except they predominated all of that. They mooted the case based on repeal. How did Shelby County work? Did it instantaneously strip courts of power to adjudicate cases, or is it, like most constitutional claims, something subject to waiver? Well, it's subject to waiver in the sense that it is, in fact, true that they did not present a constitutional claim here. And Judge Collier asked them, do you want to present a constitutional claim? They said, can we come back next week and let you know? And they said, no, we're not going to amend our complaint to present a constitutional claim. But since they were the plaintiffs, they can still argue. I think that the case, we don't have to pursue the case anymore because the statute's been facially held unconstitutional. But there was the second question then of, does it, in fact, govern events in 2011? These maps were passed two years before Shelby County, and there could have been an issue about that. And the fact that they hadn't preserved the claim might have been relevant to that as well. When did the San Antonio litigation conclude? When did it conclude? It's still going on, actually, Your Honor. Right. So might they have wanted to press forward or to have this thing booted? Might there have been arguments about their desire to have the issue cleared up about whether these were valid lines to begin with just to help in the San Antonio litigation? Well, I think it's pretty clear the reason that they repealed these maps, snatched defeat from the jaws of victory the day after Shelby County, is because they knew that once the Section 2 claims in San Antonio became ripe, once the Section 5 claims, which was keeping those from being ripe, went away, that that court had already pre-tried the case, and they were going to be held again to be intentional violators of the rights of African Americans and Latinos. And if that happened, they knew they could then be subject to preclearance again under 3C. So the last thing they wanted to do was have these maps reviewed by that three-judge court in San Antonio. That's why they repealed the maps the day after Shelby County, knowing that they had this great new law that had just been made by the Supreme Court, knowing that our judgment was still in effect, they went ahead and repealed it post-haste to preclude that kind of outcome in San Antonio. And they took the risk. That was their decision. The governor could have been told to wait until it's vacated. He didn't. Under your theory, isn't it the case that the Supreme Court actually didn't have to do this because it had already been mooted by the action of the Texas legislature? I think that the court always has a jurisdiction to vacate something that's moved, even after it's moved. That has to be something that courts can do. I think there's actually quite a bit of law on that. They were allowed to send it back to vacate it and say, make sure it's moved, and if it's moved, vacate it for sure down in the lower court. I don't think there's anything really problematic. So vacate and then tell them to vacate for sure. So there's this kind of rough draft provisional quality of the GVR. Yeah. Well, that's sort of what it was. It was a GVR, except that it's not a G since it's an appeal instead of a cert petition. But it's essentially the same thing. But when they vacate as moot, if they decide it's moot, they say, they remain with instructions to dismiss as moot. Right. That's a fairly common thing. That's discussed actually in the Lewis case, which Judge Collier cited. There's a whole distinction that they draw between the two kinds of vacateur. And this is clearly the kind that said, we don't know how Shelby County applies. We don't know whether the repeal moots everything. But we'll send it back for you to figure that out. And can I ask, did you seek attorney's fees under 1988 as well as the Voting Rights Act? We cited both of them. But I'm pretty sure that the 1973C is the correct provision. I think they're viewed as fungible, frankly. And most of the time in Section 5 cases, people cite both. Well, I ask because in addition to the preclearance determination, the three-judge court found intentional discrimination in this case. It did only under Section 5, though, Your Honor. It didn't have jurisdiction to adjudicate any other issue. And the burden of proof was on the state of Texas. So I don't think you can treat that as anything other than a Section 5 ruling up here, which is why those issues are being, they were afraid those issues were going to be relitigated in stanter down in the San Antonio, because the evidence was already in. And the evidence was pretty compelling about intent, frankly, in this case. Well, what I was going to ask is how, when you have, and because it's a different burden of proof and everything, too, but when you have such an intentional determination in a preclearance proceeding, does it have any collateral estoppel effect in a Section 2 case? Because it's a different burden of proof, so maybe not. Probably not, Your Honor. I'm just trying to figure out whether it would if that was part of what's going on here. I'm not entirely sure why everybody's made such an argument in San Antonio. Well, it is. But I don't think it would work that way. I mean, the way they relied on it in San Antonio was to say if there was a, I can't remember the formulation, but, you know, a reasonable chance of success in Section 5, preclearance they would grant. Intramaps that were drawn while this case was still pending, sure, absolutely. In the Section 2 case. Right. And, in fact, fees were denied in San, by the Fifth Circuit in the San Antonio case because most of the work on that was done in this case? Yes, and because what the Court reasoned, and I think this was incorrect, was that all we got was these interim decisions about intramaps pending this case, and that wasn't enough of a merits decision. That's what the Fifth Circuit's reasoning was, which was kind of odd because that's all you could get from the San Antonio case at the time we got those. And then it was mooted. And then it was with the same repeals. Right. So at least under our precedent, had the Fifth Circuit followed it, it would seem that they should have awarded fees. Right. Well, certainly, even aside from what the Fifth Circuit, here we got a final merits judgment. They then didn't even appeal the waiver decision of the District Court. It seems to me the remarkable sort of failure to play by the rules in this case is not just what they did with Judge Collier, treating her with this, giving her this advisory that doesn't even make the argument, but then to not even acknowledge that that's how she ruled in their first brief makes this a case where these are really interesting and complicated and vexing issues, but they really don't need to be addressed. You should just say, look, they waived this claim twice. It's not just the waiver in the District Court about failure to respond on National Black police officers, but when you have a waiver decision, and Judge Collier was very clear. Wait. She was waiving it. What are you referring to, the waiver in San Antonio and not following it? No, no, no. Two waivers, one in the District Court here, one in this court by failure to appeal the decision of Judge Collier. And the fact that they filed an appeal and then filed in their brief, all they talk about is the merits of the prevailing party issue without even acknowledging that Judge Collier didn't reach those merits. She relied on 7B. It seems to me that that's all you need to know. This Court has never reversed a 7B ruling of a District Court in a case involving represented parties in the District Court. You honor those decisions because it's an important rule, one that the Court needs to let the District Courts enforce. And here, the impertinence, frankly, of the state of Texas was rather quite remarkable to the District Court and then again to this Court. They couldn't even give you a response on, I mean, an argument on 7B, and it's not in their statement of issues. It's not in their description of the events in the District Court. It's not in their argument. It's simply not there. I just wanted to mention, Your Honor, before I sit down, that Council mentioned something about special circumstances as an additional argument that he wanted to make if he got to it beyond the prevailing party issue. Judge Collier was very clear that any argument based on special circumstances had been waived by the District Court. That's on page 833 of the joint appendix. She says they didn't make any argument. They conceded that there are no special circumstances that would render an award of the extent that there was some effort to raise special circumstances in this case, that's been waived as well. Thank you, Your Honor. How much time does Mr. Frederick have? We'll round up and give you a couple of minutes. Thank you. You might want to start by addressing that 7B. The waiver question, I'm sorry. Yes, Your Honor. We did not waive the special circumstances issue because... When did you respond to the motion for the plea for attorney? We filed what was called an advisory that said... Have you ever heard that triggered as a plea? I've never seen an advisory. Not before this case, Your Honor, but in this case... I understand you've seen it in this case. And in San Antonio. I had never seen it before, but they were all over the place. So it was new to me, but by the time we filed this, it was no longer new. But you didn't file a response as such to the plea or the motion for a plea, right? Well, we responded on the merits. You had a three-page response called an advisory. Yes, Your Honor. It didn't raise most of what you're arguing today, did it? I think it did raise most of what we're arguing today, only because most of what we're arguing... Did you argue the prevailing parties, though? Yes. You said they are not prevailing parties and they cannot be undershown. No, you said Texas is the prevailing party. That's what the advisory says. Yes. Okay, well, I think by negative inference that would mean that they are not the prevailing party. I think that was the point of saying that. I think you meant that Texas was the prevailing party as of that day, but didn't sort of engage in any of the sophisticated... I mean, you essentially just didn't treat it as a sophisticated or complicated question, and you abandoned all those arguments about, if you don't just get an outright win by the mere fact of Shelby County's decision, it seems like, to me at least, that everything else was waived. Two responses. One, on special circumstances, I think this goes directly to that, because we argued the most special circumstance imaginable, that is a constitutional invalidation of the law that required us to sue in the first place. Second, I'm not sure that it's good for them to rely on waiver, because they waived the mootness based on legislative repeal, J.A. 418. They say it's not moot. And waiver can't help Gonzalez and NAACP interveners, because Gonzalez relied on the catalyst theory in the district court, and the NAACP never cited Buchanan. So if we're going to hold everyone strictly to waiver, then that should cut the fee award in half at the very least. We cited Buchanan post- I'm sorry, we cited the National Black Police Officers Association and applied its holding post-Buchanan. So Buchanan doesn't change that holding. The reason that that doesn't apply is because the order vacating the judgment on appeal in that case did not call into question the merits of the underlying decision. And here it did. And that's why the fact that they once had a judgment does not waive the prevailing pardon status. Thank you. Case is submitted.
judges: Tatel, Brown, Millett, Pillard, Wilkins, Sentelle